**UNITED BRICK & CLAY WORKERS OF AMERICA and Local 790, United Brick and Clay Workers of America, Appellants,**

v.

**A. P. GREEN FIRE BRICK COMPANY, Appellee.**

**No. 17858.**

United States Court of Appeals
Eighth Circuit.

April 7, 1965.

James K. Cook, of Schuchat, Cook & Werner, St. Louis, Mo., made argument for appellants and filed brief.

James S. McClellan, of Willson, Cunningham & McClellan, St. Louis, Mo., made argument for appellee and filed brief with Charles H. Spoehrer, St. Louis, Mo.

Before VAN OOSTERHOUT and MATTHES, Circuit Judges, and YOUNG, District Judge.

GORDON E. YOUNG, District Judge.

Appellants, representatives of a labor organization (hereinafter referred to as the Union), instituted this suit pursuant to Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C.A. § 185 (1956). This suit was brought by the Union against appellee, a firebrick company refractory production concern having its main plant in Mexico, Missouri, (hereinafter referred to as the Company), to compel arbitration of certain alleged grievances arising in connection with a collective bargaining agreement entered into by the Company and the Union on November 11, 1963. The Company refused to arbitrate. After trial the district court entered judgment dismissing the complaint, and the Union has appealed.

The facts are largely undisputed and are discussed in detail by the trial court in its opinion which also sets out in full the relevant provisions of the collective bargaining agreement, Articles V and VI. United Brick & Clay Workers v. A. P. Green Fire Brick Co., 232 F.Supp. 223 (E.D.Mo.1964). After analyzing the evidence and the applicable law, the trial court concluded that the Company " * * never agreed to arbitrate the present dispute," id. at 226; and, accordingly, the trial court held that " * * * therefore, the defendant Company does not have to arbitrate." Id. at 227.

The dispute giving rise to this suit is the claim by the Union that employees who had not worked a forty hour week were entitled to overtime for all work performed on Saturday. The contract, executed on November 11, 1963, between the Company and the Union, provided for work scheduling on a six day work week. The Company strongly resisted the Union's contention and refused to process any grievance based on such a claim. The six day work week began on Monday and ended on Saturday. Certain employees worked five of the six days, and the work shifts were rotated so that each of these employees worked approximately the same number of Saturdays. This practice had beeen in effect for more than thirty years, and no overtime or premium pay had ever been given for the Saturday work unless an employee had worked in excess of forty hours a week or eight hours a day.

Article V of the November 11th agreement sets forth the grievance procedures

to be followed by the Company and the Union. It says in Section 2, "The Grievance Committee shall meet with Management and make an earnest effort to adjust all grievances and disputes arising between the Company and the Union during the life of this agreement * *." Then, after setting forth the various stages of the grievance process, that section of the agreement further provides, "Fifth: In the event the case shall not then have been satisfactorily settled, and if the issue involves the interpretation or application of the provisions of this agreement, * * *" the dispute shall be submitted to an arbitrator.

While Article XIII contains miscellaneous provisions qualifying the agreement in certain respects, there is no provision in the agreement excluding any issue from the grievance procedure or arbitration.

Article VI sets out the hours of work, which the Union claims entitles the Saturday workers to overtime rates. The pertinent parts of Article VI are as follows:

"Section 1. Eight (8) hours shall constitute a regular day's work, but this shall not be construed as a guarantee of hours of work in any one day or any one week. Time and one-half shall be paid for all work done in excess of eight (8) hours per day or in excess of forty (40) hours per week. Double time shall be paid for the seventh consecutive day worked in the work week. Overtime shall not be pyramided. Exception to the foregoing overtime provisions is noted in the case of Prospecting employees.

"Section 2. A day is a continuous 24 hour period beginning at the regular starting time of the employee's shift. A work week is a seven (7) consecutive day period beginning at 6:01 a. m. Monday. This provision shall not apply to continuous operations.

"Section 3. Janitorial employees shall not be covered by Sections 1 and 2 of this Article but shall be paid time and one-half for all work in excess of eight (8) hours in any 24 hour period or in excess of forty (40) hours per week, but not for both.

"However, the Company reserves the right to schedule the work hours of such employees on a split-shift basis."

    *     *     *     *     *

The Union first contends that the trial court erred as a matter of law in ruling that the Company did not agree to arbitrate the dispute in question since nothing in the record indicates that the parties agreed to exclude this or any other dispute from the arbitration provisions of the contract. In support of this contention, the Union argues (1) that the trial court erred in failing to rule that the dispute was arbitrable on its face under the terms of the contract and (2) the trial court erred when, having gone beyond the face of the content of Article VI, it applied the wrong standards in determining whether the dispute was arbitrable. The Union also contends that the trial court erred in considering the merits of the controversy in the guise of considering whether the dispute was subject to arbitration.

The Company argues that the evidence supports the trial court's determination that the parties had not agreed to arbitrate the Union's claim and that therefore the Company should not be compelled to arbitrate. The Company contends that the Union's claim does not involve either the "interpretation or application" of any provision of the contract, but rather attempts to incorporate a provision which was never intended by either party to be a part of it.

In numerous recent cases, the United States Supreme Court has considered suits involving the enforcement of arbitration agreements. E. g., see Drake Bakeries, Inc. v. Local 50, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). United Steelworkers v. Enter-

prise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). United Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

■ As stated in United Steelworkers v. Warrior & Gulf Navig. Co., supra at 581, 80 S.Ct. at 1352, "[a]part from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement."

While Mr. Justice Brennan, in his concurring opinion in United Steelworkers v. Am. Mfg. Co., supra at 571 and 572, 80 S.Ct. at 1364, as noted by the trial court, observed that a court must always inquire, when a party seeks to invoke its aid to force a reluctant party to the arbitration table, whether the parties have agreed to arbitrate the particular dispute; and in this sense, the question of whether a dispute is "arbitrable" is inescapably for the court, Mr. Justice Brennan continued:

"On examining the arbitration clause, the court may conclude that it commits to arbitration any 'dispute, difference, disagreement, or controversy of any nature or character.' With that finding the court will have exhausted its function except to order the reluctant party to arbitration. * * *"

Similarly, Mr. Justice Douglas, speaking for the majority in United Steelworkers v. Am. Mfg. Co., supra at 567 and 568, 80 S.Ct. at 1346, emphasized the limitation of a judicial inquiry into a dispute arising out of a collective bargaining agreement containing a broad arbitration clause, as follows:

"* * * The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether, the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

*"The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. * * *"* (Emphasis added)

■ In United Steelworkers v. Warrior & Gulf Co., supra at 582, 80 S.Ct. at 1353, Mr. Justice Douglas further pointed out, "* * * [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Accordingly, unless it can be said with positive assurance that *the arbitration clause* in the case at bar is not susceptible of an interpretation covering the asserted dispute, i. e., overtime for Saturday workers not working 40 hours, then arbitration must be ordered.

■ This Court has recently dealt with disputes over collective bargaining agreements containing arbitration clauses broad in scope, Minnesota Joint Board v. United Garment Mfg. Co., 338 F.2d 195 (8th Cir. 1964), Greater Kansas City Laborers Dist. Council v. Builders Assn., 326 F.2d 867 (8th Cir. 1964); and, in both cases arbitration was ordered. Yet, there is no inflexible rule in defining an "arbitrable issue" and a determination must depend upon the particular dispute and the arbitration provisions in each

case. United Steelworkers v. Am. Mfg. Co., supra at 570, 80 S.Ct. at 1364 (concurring opinion).

 In the case at bar, the arbitration clause in Article V of the collective bargaining agreement of November 11th provides that if a grievance has not been satisfactorily settled through the grievance procedure, then the matter should be submitted for arbitration "if the issue involves the interpretation or application of the provisions of this agreement." Other courts have uniformly ordered arbitration under similar provisions. E. g., compare the arbitration provisions in the following cases and note the interpretation accorded: Local 156 v. DuQuoin Packing Co., 337 F.2d 419 (7th Cir. 1964); A. S. Abell Co. v. Typographical Union, 338 F.2d 190 (4th Cir. 1964); Humble Oil Co. v. Independent Industrial Workers Union, 337 F.2d 321 (5th Cir. 1964); Int'l Union v. Gen. Elec. Co., 332 F.2d 485 (2d Cir. 1964); Gen. Warehousemen v. Am. Hardware Supply Co., 329 F.2d 789 (3d Cir. 1964); Proctor & Gamble Independent Union of Port Ivory v. Proctor & Gamble Mfg. Co., 298 F.2d 644 (2d Cir. 1962); and Ass'n of Westinghouse Salaried Emp. v. Westinghouse Elec. Co., 283 F.2d 93 (3d Cir. 1960).

The collective bargaining agreement of November 11th expressly deals with the hours of work in detail in Article VI. It follows that the claim asserted by the Union regarding Saturday workers is governed by the contract. Even assuming *arguendo* that the agreement does not support the Union's claim, as the Company contends, this conclusion is based on an "interpretation" of the agreement which the parties have left to an arbitrator. As pointed out in United Steelworkers v. Am. Mfg. Co., supra at 568, 80 S.Ct. 1342, regardless whether the Union is right or wrong, the claim presents a question for the arbitrator since it is an issue which " * * * involves the interpretation or application of the provisions of the agreement * * * "; and this fact alone, that the claim asserted does involve the interpre-

tation or application of the provisions of the agreement, makes the issue "arbitrable" in the case at bar.

We hold that the dispute regarding Saturday workers is arbitrable on its face under the terms of the contract. Because of the view which we take, it is unnecessary to proceed further and consider the additional arguments made by the Union. We, of course, express no opinion on the merits of the controversy and we decide only that the arbitrator, as provided for in Article V of the November 11th agreement, is the proper resort for the resolution of the dispute.

Reversed.