**NATIONAL BROTHERHOOD PACKING-HOUSE AND DAIRY WORKERS, LOCAL NO. 52, Plaintiff,**

v.

**WESTERN IOWA PORK COMPANY, Inc., Defendant.**

**Civ. No. 3–652–W.**

United States District Court
S. D. Iowa, W. D.

Dec. 8, 1965.

West, McGrane & Haugan, Des Moines, Iowa, for plaintiff.

Nelson, Harding, Acklie, Leonard & Tate, Lincoln, Neb., Philip Willson, Council Bluffs, Iowa, for defendant.

HANSON, District Judge.

This is a ruling on a complaint by the Union asking for enforcement of an Arbitrator's awards.

The National Brotherhood of Packinghouse and Dairy Workers sought recognition as bargaining representative of the employees of Western Pork. Plaintiff was certified as the bargaining agent in February 1964, and a Collective Bargaining Agreement was signed to be effective from April 9, 1964, through April 8, 1966. Article VII(2) of the Agreement indicates that the signing of the Agreement terminated a strike. The Agreement contains a no strike clause.

Two grievances were filed. Arbitration was necessary and the now disputed awards were rendered by the Arbitrator on April 30, 1965. The suit was filed to enforce the awards. The evidence at the hearing showed that the Company has been complying with the Arbitrator's awards and, while this is not actually material to this case, it should be noted in light of the contention that some back pay may be due the employees. Defendant, Western Iowa Pork, sets forth the issue as to "whether the Arbitrator exceeded his express authority as outlined in the Collective Bargaining Agreement between the parties."

In United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403, the court said:

"Section 203(d) if the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U.S.C. § 173(d), states, 'Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. * * *' That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play."

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator."

"The courts, therefore, have no business weighing the merits of the grievance, or determining whether there is particular language in the written instrument which will support the claim."

In United Steelworkers of America, AFL–CIO v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, the court states:

"The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate."

"The collective agreement covers the whole employment relationship. It calls into being a new common law— the common law of a particular industry or of a particular plant."

"There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen or even fifty pages. Within the sphere of collective bargaining, the institutional characteristics and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement. We must assume that intelligent negotiators acknowledged so plain a need unless they stated a contrary rule in plain words."

"Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement. Many of the specific practices which underlie the agreement may be unknown, except in hazy form even to the negotiators."

"The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement."

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement."

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

The first grievance in this case was entitled No. 27 and dealt with holiday pay. The Agreement stated: "The Company guarantees to each regular full-time employee thirty-six (36) hours work or pay equivalent to thirty-six (36) hours at his regular rate of pay for each period of Monday through Saturday * * *. barring acts of God." "All regular full-time employees except probationary employees shall be paid for eight (8) hours at their regular rate of pay for each of the holidays set forth * * *."

The Company took the position that the employee was not entitled to full holiday pay for any week in which he did not work 36 hours and that any hours less than 36 which were not worked would be deducted from the 8 holiday hours. The contract did not say whether the 8 hour holiday pay was part of the guaranteed 36 hours or whether it was not part of the guaranteed 36 hours. This grievance was certainly a claim which on its face was governed by the contract.

The second grievance entitled No. 28 dealt with overtime pay. The Agreement stated: "The basic work day will be eight (8) hours. The basic work week will be forty (40) hours. It is understood that the foregoing does not restrict the amount of time an employee can be required to work to eight (8) hours in one day or forty (40) hours in one week." "The regular work week shall be five (5) of six (6) days, Monday through Saturday." Article VI (4) states: "One and one-half times the regular rate of pay shall be paid for all worked in excess of eight (8) hours in any day or forty (40) hours in any one work week."

The grievance in substance contended that the Company terminated its use of dark days (giving an employee a regularly scheduled day off other than Saturday or Sunday) and that the Company had in violation of the Agreement changed the basic work day to one other than an eight hour day and had changed the basic work week in violation of the Agreement to one other than a five day week. The Union's position was that Article VI(4) governing overtime contemplated covering only the situation where the regular day was 8 hours and the regular week 5 days. Again, this was clearly a claim that was on its face governed by the contract.

It should be noted that the arbitrator found in the Company testimony evidence that of the total employees in the bargaining unit only about 10% of the total crew accumulated on an average one to two hours of overtime.

There is another reason why the court cannot but enforce the awards. The defendant admits that the arbitration clause is quite general, and the court here finds the exclusion clauses to be vague and indefinite to some degree. In United Steelworkers of America, AFL–CIO v. Warrior & Gulf Nav. Co., supra, 363 U.S. p. 584, 80 S.Ct. p. 1354, the court said:

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."

The court finds and concludes that no need for an injunction has been shown. The plaintiff has an adequate remedy under 29 U.S.C., Section 185.

If the arbitrator's awards are indefinite, still that is not here a ground to vacate the awards. Enterprise Wheel & Car Corp. v. United Steelworkers, 4 Cir., 269 F.2d 327. The Supreme Court gave its approval to this portion of the opinion of the Court of Appeals. 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424. Accordingly, while the court feels that the awards are definite and only an accounting procedure is necessary to determine the amounts of back pay, if any, due, still if the parties cannot agree on these amounts, the proper procedure is a resubmission in the manner outlined by the Court of Appeals in Enterprise Wheel & Car Corp. v. United Steelworkers, supra.

Accordingly, it is hereby ordered that enforcement of the arbitrator's awards is granted pursuant to Section 301 of the Labor Management Relations Act (29 U.S.C., Section 185).

It is further ordered that the parties resubmit, if necessary, the grievances to arbitration according to the procedure in Enterprise Wheel & Car Corp. v. United Steelworkers, 269 F.2d 327, approved in part in 363 U.S. 593, 80 S.Ct. 1358.

It is further ordered that the prayer for injunction is hereby denied.