**DISTRICT NO. 9, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Plaintiff,**

v.

**WAGNER DIVISION, McGRAW EDISON COMPANY, Defendant.**

**No. 82–398C(D).**

United States District Court, E.D. Missouri, E.D.

June 29, 1983.

---

Cary Hammond, St. Louis, Mo., for plaintiff.

Daniel J. Sullivan, St. Louis, Mo., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

This matter is before the Court upon cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on Counts 1 and 2 of plaintiff's complaint. There exists no dispute as to the operative facts herein, the parties merely characterize these facts and their resulting legal effects in differing fashions. The dispute arises over the effect of an allegedly erroneous and ambiguous arbitration award. This Court has jurisdiction to review and enforce arbitration awards, 29 U.S.C. § 185, *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

## THE PARTIES

The defendant, Wagner Division, McGraw Edison Company, (hereinafter re-

ferred to as Wagner) is a Delaware corporation which maintains facilities and transacts business in and around St. Louis, Missouri. Plaintiff District No. 9, International Association of Machinists and Aerospace Workers, (hereinafter referred to as District No. 9) is a labor organization which at all relevant times was the exclusive bargaining agent of certain Wagner employees.

## CLAIMS

Count 1 requests this Court to resubmit the parties "dispute" to arbitration pursuant to 29 U.S.C. §§ 152 and 185. This dispute concerns the effect of an arbitrator's award. Plaintiff alleges that such a resubmission is in accordance with the collective bargaining agreement between the parties, and that defendant has breached a portion of the collective bargaining agreement (plaintiff's complaint, ¶ 10 in reference to the collective bargaining agreement, Article 4, ¶ 3) by refusing to do so.

Count 2 is asserted by plaintiff pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. This claim seeks to have this Court "correct" the arbitrator's decision by the addition to the award of compensation which would have been earned were it not for defendant's imposition of a four-day work week, or in the alternative for the resubmission of the dispute to the arbitrator.

## FACTS

Plaintiff and defendant have been parties to two collective bargaining agreements in force from March 30, 1980 until March 26, 1983 and from April 3, 1977 until April 5, 1980, respectively. Both agreements contained arbitration clauses whereby unresolved disputes between the parties would be submitted to binding arbitration.

In the early part of 1980, and in the face of declining demand for its products, Wagner unilaterally reduced its customary work week from five days to four days for a period of thirteen weeks. The union contested this action and argued that Wagner should have laid off workers according to seniority, rather than have all workers share in the work curtailment equally. The union sought back pay for all those hours missed on days (seven Mondays and six Fridays) by senior employees who would not have been laid off had Wagner curtailed hours by seniority as the union desired. After the dispute arose, Wagner offered to pay the senior employees for time missed if they would sacrifice a paid vacation day in return. Some employees took advantage of this offer but the union claims this concession by the workers was coerced and wants these workers repaid their vacation days and the other workers paid in full for the time lost. Both sides agreed to arbitrate this dispute and at the conclusion of the arbitration process, Arbitrator William Stix entered a memorandum and award, the pertinent portion of which states:

### Award

It is my award that; (1) the parties contract precludes reduction of the work week as a means of reducing manhours; (2) the company shall pay to those senior employees of the bargaining unit who, during the periods of thirteen reduced work weeks, would have worked Mondays as a weekly fifth day of employment, one-half of the wages that it would have earned on those Mondays; (3) the grievance with respect to the asserted violation of the contract by contracting out of work, is denied; (4) this award shall not take effect until at least January 26, 1982. Either party may file a motion for reconsideration, provided it is received by me by January 25, 1982. If no such motion is received, the award shall take effect on January 26, 1982. If such motion is received by January 25, 1982, the effective date, without further action by me, shall be postponed to February 19, 1982, and the other party shall have fifteen

days from its receipt of the motion to file with me a response thereto. Until the effective date of the award (and during any further postponements of the effective date), I reserve jurisdiction to amend the award or to postpone its effective date, whether at the insistence of a party or of my own motion.

Neither party moved for reconsideration or modification pursuant to ¶ 4 of the above award and as a result on January 26, 1982 the award became final. The award by its terms allowed for half days compensation to the relevant class of workers for each *Monday* lost. No mention in the award was made of any compensation due for *Fridays* lost. No mention was made of restoring the paid vacation days the employees took in response to Wagner's offer.

In early March of 1982, and after the arbitrator's award had become final by its own terms, and after defendant had tendered to plaintiff the amount called for by the award, (adjusted later due to minor arithmetical errors) the plaintiff insisted that the defendant compensate the senior employees for lost *Fridays,* reinstate the lost vacation days and submit (or more accurately, resubmit) the controversy over the award to the arbitrator. Defendant had deducted amounts corresponding to vacation days some of the workers had sacrificed. The collective bargaining agreement between the parties provides in relevant part:

*Article IV*

ARBITRATION

3. The union will have the right to strike based on the following factors:

\*    \*    \*    \*    \*    \*

(b) if the company fails or refuses to comply with the arbitrator's decision on a grievance, but if there is a dispute as to whether the company has complied with the arbitrator's award such dispute will be referred to the arbitrator who made it before a strike occurs.

Pursuant to this term, plaintiff seeks this Court to order this matter resubmitted to Arbitrator William Stix. The arbitrability of the original dispute and the arbitrator's authority to issue the award are not at issue herein.

MEMORANDUM

On the strength of the above cited statutory authority, plaintiff seeks to have the issue of Arbitrator's Stix's award referred back to him for "appropriate application" of said award (Count 1), or to "correct and enforce the award" (Count 2). As cited previously, Count 1 is grounded on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 and Count 2 is grounded in the same statute as well as 28 U.S.C. §§ 2201, 2202 and 9 U.S.C. § 1 *et seq.*

The scope of judicial review of arbitrators' awards has been delineated in the so called Steelworkers Trilogy, *United Steelworkers of America v. Enterprise Corporation,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Company,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Generally, the Supreme Court ruled that the arbitration process operated best independent of a comprehensive judicial review. Arbitration awards free of fraud or similar intrinsic infirmities would be enforced unless the arbitrator has clearly based his award upon matters outside the contract he is charged with interpreting and applying.

In distilling the standards outlined in these cases, courts have come to test arbitration awards by the following standard.

1. Did the arbitrator exceed his contractual authority?

2. Was the award arbitrary or capricious?

3. Is the award definite enough to be enforceable?

See Sheet Metal Contractors Association v. Local 28 Sheet Metal Workers, 301 F.Supp. 553 (S.D.N.Y.1969). Courts have no jurisdiction to review the merits of an award, United Steelworkers of America, supra, 363 U.S., at 568, 80 S.Ct., at 1346; Western Iowa Port Co. v. National Package Dairy Workers, 366 F.2d 275, 277 (8th Cir.1966). This strong deferential posture is occasioned by the twin considerations of the rights of the parties to contract for the resolution of their disputes by arbitration, and the process's capacity to expedite justice and relieve a burden from the judiciary. A contrary policy would destroy the entire process. See Safeway Stores v. America Bakery Local 3, 390 F.2d 79, 82 (5th Cir. 1968).

■ The most severe inaccuracy alleged by plaintiff in the arbitrator's findings is that there appears to be an ambiguity between the opinion accompanying the award and the award itself. A portion of the memorandum of Arbitrator Stix provides in part as follows:

> ... I am not disposed to award as damages the entire amount of loss wages. All things considered, I deem it appropriate to award the senior employees who would not have been laid off if seniority had been applied, one-half of the wages they lost by reduction of the work week to four days (Memorandum of Arbitrator Stix pps. 13 and 14).

While appearing to give the workers pay for half of all the days they sought, by omitting any mention of the four Fridays lost, the award gives the senior employees far less.

A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement. United Steelworkers of America v. Enterprise Corporation, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Inconsistency between the text of the arbitrator's statement of his reasons for the award and the award itself do not justify a refusal to enforce said award.

■ Plaintiff alternatively seeks remand of this matter to the arbitrator for clarification of the award. As a matter of law, a remand is merited only when an arbitrator's award is incapable of a specific act or amount paid to discharge the non-prevailing party. The award does not provide such uncertainty. It orders Wagner to pay an easily computable sum for clearly explained amounts of money to wrongly denied senior employees. Neither interpretation of the award, the completeness of the award, nor application of the award are actually at issue herein, plaintiff seeks only to attack the merits of the award. Indefiniteness is the keynote of an award which merits remand. Enterprise Corporation v. United Steelworkers of America, 269 F.2d 327, 331, 332 (4th Cir.1959), approved in relevant part, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

The award herein is far from indefinite, the plaintiff actually seeks to attack the merits of it. In conclusion, this Court deems it inappropriate to remand this cause to Arbitrator Stix.

■ Plaintiff's Count 2 contains a reference to 9 U.S.C. § 1 et seq., the Federal Arbitration Act. The Act specifically excludes contracts for labor. Amalgamated Motor Coach Employees of America v. Pennsylvania Greyhound Lines, 192 F.2d 310 (3rd Cir.1951). Further, the Arbitration Act provides for no wider or standard review of arbitration awards than does the Steelworkers Trilogy. See Newark Stereo-

*typers' Union v. Newark Morning Ledger Co.,* 261 F.Supp. 832 (D.N.J.1966).

■ Plaintiff has advanced no argument which convinces this Court that this dispute is over the company's compliance with this award. The dispute is over the merits of the award. Plaintiff points to no specific shortcoming of Wagner's compliance. If plaintiff's interpretation of Article IV, paragraph 3 were controlling, a disappointed party could invariably resort to resubmission of the issue to an arbitrator (or "correction" by a court) by arguing a "compliance" problem. While doubts are resolved in favor of arbitration, *Cf. United States Steelworkers v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), this resubmission language should not serve to effectively broaden the scope of the courts review of the arbitrator's original decisions.

Contrary to plaintiff's representation, Arbitrator Stix has disposed of the issues put before him, and as a result the employees receive only a small fraction of the relief which they desired. By not rewarding plaintiff the desired relief, Stix has not necessarily avoided this issue. As a result, Wagner is not in breach of the collective bargaining agreement's terms in its refusal to resubmit the unambiguous award of Arbitrator Stix. Although questions can be raised regarding the propriety of the award, District 9 had a procedural opportunity (Award ¶ 4) to rectify what may have simply been an oversight. It failed to exercise such opportunity, and cannot prevail here by attacking the merits of the Award.

Accordingly, it is proper that defendant's motion for summary judgment on plaintiff's Counts 1 and 2 be granted and that plaintiff's motion for summary judgment shall be denied.