**BRICKLAYERS, MASONS, MARBLE AND TILE SETTERS, PROTECTIVE AND BENEVOLENT UNION NO. 7 OF NEBRASKA, Plaintiffs,**

v.

**LUEDER CONSTRUCTION COMPANY, a Corporation, Defendant.**

**Civ. No. 72-O-338.**

United States District Court,
D. Nebraska.

July 24, 1972.

---

David D. Weinberg, Omaha, Neb., for plaintiffs.

Dean G. Kratz, Omaha, Neb., for defendant.

Robert E. O'Connor, Omaha, Neb., for Omaha Carpenters District Council of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO.

## MEMORANDUM AND ORDER

DIER, District Judge.

This matter comes before the Court upon the motion of the plaintiffs for preliminary injunction pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. Plaintiffs seek a preliminary injunction ordering defendant to comply with the provisions of Article IX of the Collective Bargaining Agreement in existence between the plaintiff and defendant corporation, and specifically, with the award of the National Joint Board for the Settlement of Jurisdictional Disputes which award assigned the work in question to the bricklayers represented by plaintiff.

The Court, after hearing oral arguments of counsel and surveying the Joint Stipulation of Facts, together with exhibits one through five (1–5), makes the following findings of fact:

1) Plaintiffs, Bricklayers, Masons, Marble and Tile Setters, Protective and Benevolent Union No. 1 of Nebraska (hereinafter referred to as the "Union"), is a labor organization representing employees in an industry affecting commerce as defined by the National Labor Relations Act, as amended, and has acted as collective bargaining agent for its members within the unit described by the Agreement herein involved.

2) Defendant, Lueder Construction Company (hereinafter referred to as "Lueder") is a corporation duly operating in the State of Nebraska and is a member of Omaha Building Contractors Employers Association, with an office in Omaha, Douglas County, Nebraska. Said defendant is an employer as defined in the National Labor Relations Act, as amended, and is engaged in commerce and affecting commerce as the term is defined in that Act.

3) A collective bargaining agreement was entered into between plaintiff and the Omaha Contractors Employers Association (hereinafter referred to as the "Association"), a multi-employer association, on the 15th day of September, 1971 (Exhibit No. 1), said agreement remaining in force and effect until June 1, 1974, thereby controlling the present controversy. Article IX of the Agreement, specifically provides for the settlement of jurisdictional disputes by submission of same to the National Joint Board for the Settlement of Jurisdictional Disputes and furthermore provides that the decision of said National Board will be binding upon the parties thereto.

4) Defendant, Lueder, as a member of the Association, was bound to the terms of the agreement between the Association and the Union pursuant to Article XV of said agreement (Exhibit No. 1).

5) On approximately April 25, 1972, Lueder assigned to members of the carpenters craft the following described work on the U. S. Cold Storage project at 108th and Olive Streets, Omaha, Nebraska: the plumbing, aligning, leveling and anchoring, including bolting and/or welding, cutting, fitting, painting and caulking of precast concrete wall panels (Stipulation 6). The foregoing assignment precipitated a jurisdictional dispute between said carpenters and bricklayers, the latter represented by the plaintiff.

6) Pursuant to Article IX of the agreement, plaintiff and defendant agreed to submit said jurisdictional dispute between the plaintiff and the Omaha Carpenters Union to the Joint Board on May 26, 1972. Oral argument of counsel makes it clear that defendant was notified of this hearing and made a party thereto (Exhibit 5), although it failed to appear before said Joint Board.

7) The Joint Board awarded the work of "plumbing, aligning, leveling, and anchoring, including bolting and/or welding, cutting, fitting, painting and caulking of precast concrete wall panels" on the U. S. Cold Storage project, Omaha, Nebraska, previously assigned to the carpenters by Lueder, to the bricklayers, the employees represented by the plaintiff (Exhibit 5). Lueder received a copy of the award of the Joint Board on and

after May 26, 1972, but continued to use carpenters on the disputed work and is presently so doing, notwithstanding plaintiffs' request that defendant abide by the terms and provisions of the Joint Board's award and the Collective Bargaining Agreement entered into on behalf of the defendant and the bricklayers.

8) The relevant provision of Article IX of the agreement (Exhibit No. 1), is as follows:

> "It is further agreed by the parties hereto that in the event they are unable to settle jurisdictional disputes on a local level they will submit the same to the National Joint Board for the Settlement of Jurisdictional Disputes established with the authority and consent of the National Labor Relations Board for the purpose of settling jurisdictional disputes in the construction industry, and abide by the decision of the Board."

■ The Court is cognizant of the well-recognized principle that a mandatory preliminary injunction at the preliminary stage of the proceeding should be granted only in rare instances where the facts and law are clearly in favor of the moving party, especially if the grant of the temporary injunction would in effect give the plaintiff the relief which he seeks in the main case. Miami Beach Federal Savings and Loan Ass'n v. Callander, 256 F.2d 410 (5th Cir.1958); Local 453, International Union of Electrical, Radio and Machine Workers, AFL–CIO v. Otis Elevator, 201 F.Supp. 213 (S.D.N.Y.1962). The relief requested by the plaintiff in the main case is enforcement of the Joint Board's award made under Article IX of the Collective Bargaining Agreement, together with damages.

■ It is well settled that this Court has jurisdiction under § 301, L.M.R.A., 29 U.S.C.A. § 185, to enforce a binding award of an arbitrator made pursuant to a Collective Bargaining Agreement between the parties, as well as to enforce a Collective Bargaining Agreement entered into by such parties. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Textile Workers v. Lincoln Mills, 353 U.S. 448, 458, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Philadelphia Marine Trade Ass'n v. International Longshoremen's Ass'n, Local 1291, 365 F.2d 295 (3rd Cir.1966).

Indeed, with the evolution of cases, such power not only exists, but the liberal and broad exercise of same is encouraged by the Supreme Court to effectuate the federal labor policy espoused by Congress by passage of the Act, to wit: private settlement of labor grievances pursuant to arbitration proceedings under Collective Bargaining Agreements. *Lincoln Mills, supra.*

> "The Supreme Court has said that the arbitral process between management and labor for public policy reasons is a most desirable result, since it guarantees self-government between the parties in the settlement of disputes." Independent Oil Workers Union, Local 117 v. American Oil Company, 296 F. Supp. 650, 656 (D.Kan.1969)

■■ When this Court is presented with a suit to enforce an arbitrator's award or ·provisions of a collective bargaining agreement, it is bound by a body of federal substantive law which the cases arising under Section 301 have fashioned from the national labor law policy, which encourages such agreements and arbitration of disputes arising thereunder. Boys Markets, Union, Local 770 Inc., v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1969); Avco Corp. v. Aero Lodge, No. 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1967). Thus, the Court is not free to roam through various channels and avenues attacking the award of the arbitrator. It is generally not within this Court's purview to review the merits of the arbitrator's decision. Amanda Bent Bolt Co. v. Local 1549, UAW et al., 451 F.2d 1277, 1278 (6th Cir.1971).

"\* \* \* When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal." United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

■ This Court is confined to the determination of whether or not an arbitrable dispute existed under the contractual requirement of arbitration entered into between the plaintiffs and the defendant and whether the arbitrator had authority to grant the awards in question. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); Western Iowa Pork Co. v. National Brotherhood Packinghouse and Dairy Workers, 366 F.2d 275 (8th Cir. 1966).

■ In so determining this issue of arbitrability, the Court looks to the agreement between the parties in such a manner as it would any contract between the parties, ascertaining the context in which it was made and interpreting what the parties meant by the words within the four corners of the instrument. United Brick & Clay Workers of America v. A. P. Green Fire Brick Co., 343 F.2d 590 (8th Cir. 1965); Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F.2d 944 (2d Cir. 1964). This Court finds that in looking to the terms of the agreement entered into between plaintiffs and Lueder, specifically Article IX of said agreement, the language is unequivocal. The parties agreed to submit jurisdictional disputes to the National Joint Board for their settlement and to abide by the decision of said Board. Defendant's counsel maintains that Lueder is not bound to abide by the award because the arbitrator, the National Joint Board for Settlement of Jurisdictional Disputes, was not in existence at the time the present agreement was executed. When one of the parties to a collective bargaining agreement claims that he is not bound to it nor the awards entered pursuant thereto, this Court must determine the validity of such a claim. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462. To support its position, counsel for defendant draws the Court's attention to a dispute heard before the National Labor Relations Board, Bricklayers Local No. 1, and Lembke Construction Co. and Carpenters District Council, 194 N.L.R.B. 98 (1971). From the above case, it could not be clearer that, although the National Joint Board did terminate on September 30, 1969, the Board was revived on April 3, 1970, and from all information presently before the Court, has continued to operate as an arbitrator in jurisdictional disputes of the nature herein involved from that date forward. The agreement involved in the present case was executed on September 15, 1971, over a year after the revival of the Joint Board. This Court finds no merit in defendant's position.

■ There is no dispute presented by counsel for defendant that proper procedures of notification were followed and even were such disputes before this Court it is not our duty to deal therewith as it is a procedural matter within the purview of the arbitrator. John Wiley & Sons, Inc. v. Livingston, 376 U. S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Furthermore, it is no objection to compliance with the award that defendant did not attend the hearing before the Joint Board. As to this latter issue, the Court states that the case of Food Handlers Local 425, Amalgamated Meat Cutters, etc. v. Pluss Poultry, Inc., 260 F.2d 835 (8th Cir.1958), has been considered and deemed not applicable to this case. See Amalgamated Meat Cutters and Butcher Workmen, No. 385 AFL-CIO v. Penobscot Poultry Company, Inc., 200 F.Supp. 879 (D.Maine, 1961).

If the parties, for their own good reasons and for the smooth and uninterrupted operation of labor operations, have bargained for and expressly agreed to the determination of their disputes by arbitration as the parties herein have done, it is not for this Court to do other than enforce such agreement and the final award of the arbitrator issued pursuant thereto.

This Court is well aware of the sanctions against the issuing of injunctions in suits generally involving employers and employees. Section 4 Norris-LaGuardia Act, 29 U.S.C.A. § 104; Rule 65(e), Federal Rules of Civil Procedure. However, the use of mandatory injunctions to compel compliance with an arbitrator's award has been found not to fall within these sanctions as such a state of affairs would frustrate those bargaining agreements which represent the attainment of an important goal of the national labor policy. See Boys Markets v. Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed. 199 (1969); Association of Westinghouse Salaried Employees v. Westinghouse Electrical Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed.2d 510 (1955); New Orleans Steamship Ass'n v. General Longshoremen Workers, Local Union No. 1418, 389 F.2d 369 (5 Cir. 1968); A. L. Kornman Co. v. Amalgamated Clothing Workers, 264 F.2d 733 (6th Cir.1959); Central Pennsylvania Motor Carriers Conference Inc. v. Local Union No. 773, International Brotherhood of Teamsters, 226 F.Supp. 795 (E.D.Pa.1964).

The Court thus concludes that the issuance of a mandatory injunction, such as is presently sought by plaintiff, is within the power of this Court as a means to compel defendants to honor the decision of the Joint Board, thereby specifically enforcing the agreement entered into by the parties to so abide by said decision. Having concluded that the facts and law presently before it require such a result, this Court finds that a mandatory preliminary injunction compelling the defendant to abide by the decision of the National Joint Board awarding the work in question on the U. S. Cold Storage project to those employees represented by the plaintiff should issue.

The Court specifically reserves ruling on (1) the issue of damages claimed by plaintiff, as no evidence of same has been presented to this tribunal; and (2) the issue of the validity of said collective bargaining agreement. As to the latter issue, no question of said validity has heretofore been brought before this Court, but in the event of such presentment, jurisdiction for such determination is properly founded within the venue of this forum. Atkinson v. Sinclair Refining Co., *supra*; United Steelworkers of America v. Enterprise Wheel & Car Corp., *supra*.

It is noted that the course of action pursued in this situation in presenting the dispute to the Court as opposed to allowing work stoppage is not only acceptable, but indeed encouraged. The utilization of such a method fosters the goals and principles established by Congress and the Supreme Court as desirable in our national labor policy and should be diligently pursued by all concerned.

The Court also emphasizes that the injunction so issued is confined to the enforcement of the Joint Board's award of May 26, 1972, and only to the work therein assigned.